IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Douglas Green, #354245, | ) | C/A No.: 1:14-2225-MGL-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Lieutenant Sandra Kirkland, Officer James McElroy, and Warden Michael McCall, | ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

Plaintiff Douglas Green, proceeding pro se and in forma pauperis, is an inmate incarcerated at Broad River Correctional Institution in the custody of the South Carolina Department of Corrections ("SCDC"). Plaintiff files this action alleging violations of his constitutional rights while previously incarcerated at Lee Correctional Institution ("LCI") against LCI employees Lieutenant Sandra Kirkland ("Kirkland"), Officer James McElroy ("McElroy"), and Warden Michael McCall ("McCall") (collectively "Defendants"). This matter is before the court on Defendants' motion for summary judgment. [ECF No. 101]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment procedures and the possible consequences if he failed to respond adequately to Defendants' motion. [ECF No. 102]. This matter having been fully briefed [ECF Nos. 107, 110], it is ripe for disposition.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civ. Rule 73.02(B)(2)(d) (D.S.C.). Because the motion is dispositive, this Report and Recommendation is entered for review

by the district judge. For the following reasons, the undersigned recommends the district judge grant in part, and deny in part, Defendants' motion for summary judgment.

I.      Factual and Procedural Background

Plaintiff alleges that on May 16, 2013, he ran out of his unit in an attempt to join recreation when he was stopped by Horne and McElroy, who told him he could not go because Kirkland had already locked the door. [ECF No. 27-1 at 3]. Plaintiff states that despite Horne telling him "Back up, Back up, Back Up," he told her "no" and that he wanted to speak to Kirkland. *Id*. Plaintiff alleges that Horne then sprayed him in the face with mace. Plaintiff states that he "blacked out" and then began "trying to defend [himself] out of anger." *Id*. Defendants allege, and Plaintiff has not disputed, that Plaintiff began punching Horne. [ECF No. 101-2 at 4; 101-3 at 5–8]. Plaintiff admits to swinging at Horne. [ECF No. 107-2 at 2].

Plaintiff alleges that several minutes later, Kirkland and McElroy arrived at his unit and gave Plaintiff an order to turn around and be handcuffed. [ECF No. 27 at 5]. Plaintiff states that he followed all directives Kirkland and McElroy issued. *Id*. Kirkland and McElroy held Plaintiff's arms and escorted him downstairs. *Id*. Plaintiff alleges that as they were leaving the unit, Kirkland rammed Plaintiff's head against the metal door frame head. *Id*. Plaintiff alleges that Kirkland and McElroy then pulled him in the hall outside of the unit and Kirkland rammed Plaintiff's head against the wall. *Id*.

Plaintiff alleges that as they continued to escort him to the medical dorm, Kirkland began cursing at him and calling him obscene names. *Id*. at 6. Plaintiff alleges that when he began speaking up for himself, Kirkland pushed his head into the corner of a brick

wall, "splitting [his] head open" and chipping a tooth on his right side. *Id*. at 6. Plaintiff states that he needed seven stitches. [ECF No. 27-1 at 11–12].

Plaintiff alleges that McElroy failed to protect him against Kirkland's excessive force and McCall did not take corrective action when he filed a grievance regarding the incident. [ECF No. 27 at 8–9]. Plaintiff seeks compensatory and punitive damages. *Id.* at 9.

II.    Discussion

A.    Standard on Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-

3

moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

  B. Analysis

    1. Failure to Effect Service of Process (McElroy)

Defendants argue that Plaintiff failed to serve McElroy with a copy of the summons and complaint. The summons was returned unexecuted on October 17, 2014. [ECF No. 80]. Plaintiff was previously warned:

> Plaintiff **must** provide, and is responsible for, information sufficient to identify defendants on the Forms USM-285. The United States Marshal cannot serve an inadequately identified defendant. **Unserved defendants may be dismissed as parties to this case if not served within the time limit governed by Rule 4(m) and this order.**

[ECF No. 8] (emphasis in original). The returned USM-285 indicates that the Marshal Service was unable to serve McElroy at the address Plaintiff provided or to obtain an accurate forwarding address. [ECF No. 80]. Plaintiff remains ultimately responsible for providing a correct address for service. Because Plaintiff has not provided the court or the

4

Marshal with an address where McElroy may be served, Plaintiff has failed to effect service of process on McElroy, and the undersigned recommends he be dismissed.

2. Excessive Force (Kirkland)

Plaintiff alleges that Kirkland used excessive force when she slammed Plaintiff's head against a metal door frame, pushed his head into a wall, and pushed his head into the corner of a brick wall. [ECF No. 27 at 7–8]. In an excessive force case, a claimant must meet a heavy burden to satisfy the subjective component of the claim. Specifically, Plaintiff must prove that a correctional officer applied force "maliciously and sadistically for the very purpose of causing harm," rather than in a good-faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986); *see also Wilkins v. Gaddy*, 559 U.S. 34 (2010). The objective component of an excessive force claim is not nearly as demanding, however, because "'[w]hen prison officials maliciously and sadistically use force to cause harm'. . . 'contemporary standards of decency are always violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.'" *Wilkins*, 559 U.S. at 37 (quoting *Hudson v. McMillan*, 503 U.S. 1, 7 (1992)).

Courts must give "wide-ranging deference" to the execution of policies and practices that in the judgment of the prison officials are necessary "to preserve internal order and discipline and to maintain institutional security." *Whitley,* 475 U.S. at 321–22. The Supreme Court has recognized that prison officials work in an environment where there is an ever-present potential for violence and unrest and that courts should not

5

substitute their judgment for that of the officials who must make a choice at the moment when the application of force is needed. *Id.* The deference owed to prison administrators extends to "prophylactic or preventive measures intended to reduce the incidence of . . . breaches of prison discipline." *Id.* at 322.

The Supreme Court has directed courts to balance several factors in determining whether prison officials act maliciously and sadistically. These factors include (1) the necessity for the application of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the injury actually inflicted; (4) the extent of the threat to the safety of the staff and prisoners, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) the efforts taken by the officials, if any, to temper the severity of the force applied. *Whitley*, 475 U.S. at 321.

Here, there are disputes of material fact between Plaintiff's verified complaint[1] and Kirkland's affidavit. Plaintiff claims that after his altercation with Horne, he returned to his unit on the "top tier," where Kirkland and McElroy found Plaintiff. Plaintiff claims that he complied with Kirkland and McElroy's directives to turn around to be handcuffed. Although Plaintiff admits to "speaking up for himself" while being escorted, which could indicate he was being verbally combative, he also denies being disruptive during the process. [ECF No. 27 at 5–6].

---

[1] In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits when the allegations contained therein are based on personal knowledge. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991).

On the other hand, Kirkland's affidavit suggests that Kirkland gave Plaintiff directives to be handcuffed relatively soon after Plaintiff was pulled off of Horne, as she does not indicate any lapse in time. [ECF No. 101-2 at ¶¶ 5–6]. Kirkland further states:

> I gave Plaintiff several directives to place his hands behind his back so that he could be escorted to medical to be checked out. Plaintiff clinched his fist and continued to act in an aggressive manner towards me. I constantly gave him directives to comply and he continued to resist being placed in handcuffs while on the yard. Plaintiff continuously refused to obey my directives and after continuously approaching me in an aggressive manner I placed him against the wall and gave an additional directive to stop. At that time, Plaintiff complied and I escorted him to medical to be checked following his incident with Officer Horne.

*Id*. at ¶ 6. In addition, Kirkland never admits or denies whether she slammed Plaintiff's head against a metal door frame, pushed his head into a wall, or pushed his head into the corner of a brick wall. The incident report written by McElroy suggests that he and Kirkland went to the top tier, where they placed Green in handcuffs and escorted him to medical. [ECF No. 101-3 at 6–7]. These disputes of fact are material in that they affect the court's determination of the necessity of the application for force, the relationship between the need for force and the amount of force used, and the efforts taken to temper the amount of force used. Therefore, the undersigned recommends Defendants' motion for summary judgment be denied as to Plaintiff's claim of excessive force against Kirkland.

### 3. Supervisory Liability (McCall)

Plaintiff appears to allege that because McCall supervises Kirkland and McElroy, he is responsible for Kirkland and McCall's alleged unconstitutional actions. [ECF no. 27 at 8–9]. Generally, the doctrine of vicarious liability is inapplicable to § 1983 suits, such

7

that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom that results in illegal action. See *Monell v. Dep't of Soc. Services*, 436 U.S. 658, 694 (1978). Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization. *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984), cert. denied, *Reed v. Slakan*, 470 U.S. 1035 (1985). Plaintiff's claims that Kirkland and McElroy engaged in wrongful conduct, without more, are insufficient factual allegations to demonstrate that McCall was aware of, or deliberately indifferent to, any constitutional risk of injury to Plaintiff. Plaintiff's claim that he wrote McCall grievances after the incident is insufficient to show McCall is liable for the incident. The undersigned recommends that the court dismiss Plaintiff's claims against McCall.

    4.  Qualified Immunity

Defendants argue that Kirkland is entitled to qualified immunity from Plaintiff's lawsuit. [ECF No. 101-1 at 4–7]. In *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), the Supreme Court established that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.  When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged

8

misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case. *Id.* at 236.

In *Maciariello v. Sumner*, 973 F.2d 295 (4th Cir. 1992), the Fourth Circuit further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

*Maciariello*, 973 F.2d at 298.

Here, a question of fact exists as to whether Kirkland used excessive force against Plaintiff. At this stage in the litigation, it is unclear whether Kirkland violated a clearly-established right of Plaintiff. Therefore, Kirkland is not entitled to summary judgment on the basis of qualified immunity.

III.     Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends Defendants' motion for summary judgment be granted as to McElroy and McCall and denied as to Kirkland.

IT IS SO RECOMMENDED.

March 19, 2015                                                      Shiva V. Hodges
Columbia, South Carolina                                    United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).